NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RICARDO IRIZARRY,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2024-1872

---

Petition for review of the Merit Systems Protection Board in No. NY-0752-23-0031-I-2.

---

Decided: January 6, 2026

---

LORENZO J. PALOMARES, Palomares Starbuck & Associates, Miami, FL, for petitioner.

VIJAYA SURAMPUDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by ALBERT S. IAROSSI, PATRICIA M. MCCARTHY, YAAKOV ROTH; JAMES ANDREW STEVENS, Office of Associate Chief Counsel, United States Customs & Border Protection, United States Department of Homeland Security, Washington, DC.

---

Before LOURIE, TARANTO, and CHEN, *Circuit Judges*.

PER CURIAM.

At the time relevant to this appeal, Ricardo Irizarry served as an Assistant Area Port Director (Assistant Director) for Customs and Border Protection (CBP), a division of the Department of Homeland Security (agency), in San Juan, Puerto Rico. The agency removed Mr. Irizarry from his federal employment based on charges related to his (1) affair with a subordinate officer; (2) certain personal text messages sent to another subordinate officer; and (3) improper use of government property. The Merit Systems Protection Board sustained the removal. *See Irizarry v. Department of Homeland Security*, No. NY-0752-23-0031-I-2, 2024 WL 2784956 (M.S.P.B. Apr. 24, 2024) (*Board Decision*). Mr. Irizarry appeals the Board's decision, and we now affirm.

I

CBP promoted Mr. Irizarry in 2015 to be an Assistant Director at the San Juan area port. Appx. 146. In that role, Mr. Irizarry served as a supervisory CBP officer in the second highest level of command. Appx. 294. His job responsibilities included managing a highly skilled staff and coordinating with local law enforcement. Appx. 49–57.

In 2021, a subordinate officer reported to the agency that she had been engaged in "consensual relationships with members of CBP management in San Juan." Appx. 107, 117. She served under Mr. Irizarry's chain of command. Appx. 194. At the same time, her relationships were also reported by her spouse, himself a subordinate CBP officer in the same location, who accused Mr. Irizarry of misconduct by name. Appx. 106–07; Appx. 122–23. Those reports resulted in the agency's investigation of the subordinate officer's extra-marital affairs with Mr. Irizarry and other supervisory CBP officers. *See* Appx. 106–115.

During the agency's investigation, Mr. Irizarry admitted that he had engaged in a sexual relationship with the subordinate officer from approximately 2014 to 2018. *See* Appx. 163–74; Appx. 113. He admitted that, at least on one occasion, the pair engaged in sexual activity on government property while both were on duty. Appx. 163, 169, 175. Mr. Irizarry further admitted to sending certain text messages on his government-issued cell phone to a second subordinate officer under his chain of command. Appx. 156–57. In an interview related to the investigation, that second subordinate officer stated that Mr. Irizarry's text messages made her "feel uncomfortable" and that the texts were "unwelcomed." Appx. 183.

The investigation revealed that Mr. Irizarry's sexual relationship with the first subordinate officer became the subject of rumors among other CBP officers. Appx. 111–112. In interviews of other CBP officers, the agency heard testimony that Mr. Irizarry had earned a reputation as someone who likes to "follow" and "harass" women, including subordinates in his chain of command. *Id.*

Following the investigation, the agency issued a notice of proposed removal to Mr. Irizarry. Appx. 194–98. The notice stated a charge of conduct unbecoming a supervisory CBP officer, the charge including a specification of his sexual relationship with the first subordinate officer and a specification of sending "inappropriate text messages" to the second subordinate officer. Appx. 194. The notice also stated a charge of misusing government property, the charge including a specification of using his government-issued telephone to communicate with both aforementioned subordinate officers for reasons unrelated to official CBP business and a specification of engaging in sexual

activity on government property while on duty.  Appx. 194–95.[1]

On November 28, 2022, the agency's deciding official sustained both the charge of conduct unbecoming and the charge of misuse of government property.  Appx. 229.  In determining the appropriate penalty, the official turned to the factors outlined by *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), including the mitigating factors of Mr. Irizarry's otherwise satisfactory performance and his potential for rehabilitation.  Appx. 229–31.  In particular, she concluded that Mr. Irizarry's decision to engage in a relationship with a subordinate officer and to engage in sexual activities on government property while on duty "demonstrate[d] extremely poor judgment."  Appx. 229.  She added that Mr. Irizarry's conduct caused the agency to lose confidence in his "ability to act in accordance with [the] ethical and professional standards of CBP."  Appx. 229–31.  In considering any mitigating circumstances, the deciding official concluded that Mr. Irizarry had "limited potential for rehabilitation" because he had "downplayed [his] actions and attempted to shift the blame for [his] actions onto other people."  Appx. 231.  The agency removed Mr. Irizarry from federal employment effective the next day.  *Id.*

Mr. Irizarry appealed his removal to the Board.  *Board Decision*, at 1.[2]  The Board-assigned administrative judge (AJ) held a hearing on January 23, 2024.  *Board Decision*, at 2.  Following that hearing, the AJ sustained the agency's two charges against Mr. Irizarry, found the required connection to the efficiency of the service proved, and upheld

---

[1]     The notice stated one more charge, which was not sustained by the deciding official and so is not at issue here.  *See* Appx. 194, 229.

[2]     For the *Board Decision*, we cite the native page numbers on the opinion in the Appendix, which match the Appendix numbers.  *See* Appx. 1–14.

the penalty of removal. *Id.* at 3–7. The AJ's opinion became the Board's final decision on May 28, 2024. *See id.* at 7. Mr. Irizarry timely appealed to this court. We have jurisdiction to review his appeal under 28 U.S.C. § 1295(a)(9).

## II

We may set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938), even if an opposite conclusion might also be supportable, *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20 (1966).

It is undisputed that Mr. Irizarry engaged in the conduct underlying the two charges. On appeal, Mr. Irizarry focuses on the agency's condemnation of his consensual sexual relationship with a subordinate officer, contending that the Board should not have sustained the agency's charges and his removal because there was no express directive or standard of conduct prohibiting such a relationship. Irizarry Br. at 7, 14–15, 20. We reject this contention.

We recently ruled in *Cruz v. Department of Homeland Security* that the Board's decision to sustain the agency's removal of a superior officer for engaging in a consensual sexual relationship with a subordinate officer was not unreasonable. No. 2024-1820, 2025 WL 3552114 (Fed. Cir. Dec. 11, 2025) (*Cruz*). There, the appellant served as Area Port Director in San Juan, making him the highest-ranking CBP employee in the region. *Id.* at *1. We concluded that, despite the lack of an express directive prohibiting

supervisor-subordinate relationships, the agency's rationale for removal (namely, to ensure integrity in the workplace), combined with the agency's reliance on "'common sense' standards for assessing workplace-related conduct," justified the appellant's removal. *Id.* at \*2–3. We also determined that we had to uphold the Board's decision notwithstanding that, after the events in question (both in *Cruz* and here), CBP announced a new policy regarding fraternization between supervisors and subordinates, which did not prohibit such relationships but imposed certain reporting requirements. *Id.* at \*3; Appx. 252. The agency could alter its policies over time, we concluded, and the new policy did "not undermine the reasonableness of the agency's assessment of the governing standards at the time of [the appellant's] removal and the reasonableness of the penalty imposed by the agency." *Id.*

Although *Cruz* is not binding precedent, it is persuasive, and the court reaches the same judgment in this case. The facts here are relevantly similar to the facts of *Cruz*, with only two notable differences, both of which add further support for the Board's decision to sustain Mr. Irizarry's removal. First, the AJ found (with support in substantial evidence) that Mr. Irizarry engaged in sexual relations with the first subordinate officer on government property while on duty. *Board Decision*, at 5; *see* Appx. 163, 169, 175. Second, the AJ found (with support in substantial evidence) that Mr. Irizarry engaged in inappropriate and unprofessional conduct by sending unwelcome, discomforting text messages to the second subordinate officer. *Board Decision*, at 4; *see* Appx. 271–72.

Given the facts, including Mr. Irizarry's inappropriate conduct beyond the consensual sexual relationship, we conclude, for the same reasons discussed in *Cruz*, that the Board reasonably sustained the agency's charges and that the agency demonstrated a "sufficient nexus between [Mr. Irizarry's] conduct and the efficiency of . . . service." *See*

*Scheffler v. Department of the Army*, 117 M.S.P.R. 499, ¶ 10 (2012), *aff'd*, 522 F. App'x 913 (Fed. Cir. 2013); 5 U.S.C. § 7513(a); *Board Decision*, at 6. The Board's determination that Mr. Irizarry's "offenses raise[d] serious questions as to his judgment and his understanding of the need to behave in a professional manner" is supported by substantial evidence. *Board Decision*, at 6. And, as in *Cruz*, Mr. Irizarry's attempt to invoke CBP's recent fraternization policy does not alter our conclusion that the Board reasonably sustained the penalty of removal. *See* Irizarry Br. at 21–22; *Cruz*, at \*3.

Mr. Irizarry's remaining arguments amount to requests for us to reweigh the evidence. But under the governing deferential standard of review, it is not our task to reweigh evidence. *See Jones v. Department of Health & Human Services*, 834 F.3d 1361, 1369 (Fed. Cir. 2016).

## III

We conclude that the Board's decision is supported by substantial evidence and that Mr. Irizarry has not shown that the Board's decision is arbitrary, capricious, or contrary to any law or regulation. We therefore affirm.

The parties shall bear their own costs.

**AFFIRMED**